UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSARIO PANEPINTO, WILLIAM R. SWIHART, LUIS F. LOPEZ, JASON HOSIER, DEBRA J. OLES and JAMES I. SCOTT IV, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>                     vs.<br><br>VOLKSWAGENWERK AKTIENGESELLSCHAFT, AUDI AKTIENGESELLSCHAFT AND VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>                     Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMAND |

**CLASS ACTION COMPLAINT AND REQUEST FOR JURY TRIAL**

<u>Introduction</u>

1. Plaintiffs Rosario Panepinto (hereinafter "Panepinto"), William R. Swihart (hereinafter "Swihart"), James I. Scott, IV (hereinafter "Scott"), Luis F. Lopez (hereinafter "Lopez") Debra J. Oles (hereinafter "Oles") and Jason Hosier (hereinafter "Hosier"), (hereinafter collectively referred to "proposed class representatives") through their counsel, on behalf of themselves and all other individuals and entities similarly situated as more fully described *infra*, initiate this proposed class action involving the following vehicles: (i) 2008 through and including 2012 model year Audi motor vehicles equipped with the 2.0L TSI turbocharged engine and (ii) 2008 through and including 2012 model year Volkswagen motor vehicles equipped with the 2.0L TSI turbocharged engine (hereinafter collectively "class vehicles" or "class vehicle").   Class vehicles are equipped with 2.0L TSI turbocharged four cylinder multi-valve engines including but not limited to engine codes CCTA,

CBFA, CAEB and CPMA (hereinafter "class engines" or "class engine").[1]   Named proposed class representatives and members of the proposed class request injunctive relief, monetary damages, including multiple damages where applicable, court costs and attorney fees against each of the respective Volkswagen and Audi entities based upon their breach of express warranty, breach of implied warranty, misrepresentation, unfair and deceptive business practices and unjust enrichment under the laws of California, Florida, Maryland, New York, North Carolina, Ohio and the Magnuson-Moss Warranty Act and/or alternatively, as a nationwide class as further defined below.[2]

2. Class engines are predisposed to premature timing chain system[3] failure.  The timing chain system is comprised of internal engine components.   The system connects and synchronizes the engine's camshaft and crankshaft, which in turn controls the opening and closing of the valves in the engine's combustion chambers.   The timing chain system ensures the engine operation occurs in the precise, synchronized manner necessary for the engine to function.   A timing chain system failure or malfunction causes the camshaft timing chain to skip teeth on the camshaft and/or crankshaft sprockets.   This occurrence causes the camshaft and crankshaft to fall out of synchronization and lose power or cause the engine's pistons and valves to smash into one another.   Depending on the degree of camshaft and crankshaft misalignment, the engine will operate poorly resulting in stalling and a limited ability to accelerate or maintain vehicle speed.   Timing chain system failures can also cause sudden and catastrophic engine self-destruction as the valves impact the cylinder pistons.   These scenarios pose a serious safety issue while the vehicle is being operated since there is loss of engine power without warning, loss of power-assisted steering and reduced braking caused by lack of engine

---

[1] Class vehicles include the Audi A3, A4, A5 and Q5 and with the Volkswagen CC, Beetle, EOS, Golf/GTI, Jetta, Passat, Sports Wagon and Tiguan, *inter alia*.

[2] With respect to the California CLRA claim, plaintiffs only assert a claim for injunctive relief herein and intend to amend the complaint to add a claim for monetary relief under California law.

[3] The "timing chain system" is comprised *inter alia* of the camshaft sprockets, camshaft chain, camshaft chain hydraulic tensioner, timing gear-tensioning rail and timing gear chain rails. The system is depicted in Figure 1, *infra.* .

vacuum.  In class vehicles equipped with manual transmissions, the drive wheels will lock and cause loss of directional stability and steering.  In other instances, the engine may fail to start, leaving the driver and passenger stranded mid-journey.

3.  Class vehicles are defective with respect to the timing chain system that subjects class engines to premature catastrophic engine failure.  Class vehicles are further defective since the vehicles were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that did not incorporate timing chain system inspection, maintenance and/or service intervals.   Engines incorporating a valve train operated with a timing chain are supposed to be superior to a belt driven valve train in reliability, operational life duration, maintenance requirements and overall performance.  These are the primary reasons that the defendants Volkswagenwerk Aktiengesellschaft (hereinafter "VWAG"), Audi Aktiengesellschaft (hereinafter "Audi AG") and Volkswagen Group of America, Inc. (hereinafter "VWGoA") (hereinafter collectively referred to as "defendants") introduced the class engines in the United States market in 2008.

4.  Certain model Volkswagen vehicles sold in the United States between 2008 and 2012 continue to utilize a gasoline engine equipped with a timing belt, including but not limited to models of Passat and Golf vehicles.  The USA Warranty and Maintenance pamphlet (common to chain and belt driven valve train engines) does not recommend replacement of the timing belt until 110,000 miles.  There are no maintenance recommendations for the timing chain system in class engines, through and including the 120,000 mile service.

5.  The timing chain system is reasonably expected by the defendants, proposed class representatives and proposed class members to last the serviceable life of the vehicle that is in excess

of 120,000 miles.[4]   The timing chain systems in class vehicles often fail at less than 50% of their reasonably expected useful life.   Moreover, after experiencing a failure of the timing chain system, some class engines are not repairable and require complete engine replacement.   Class engine failures cost between $1,200.00 (to replace the tensioner and timing chain where there is no engine damage) and $10,000.00 (to replace the entire engine). Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class engines became public information.

**Jurisdictional and Venue Statement**

6. Diversity jurisdiction exists under 28 U.S.C. § 1332(a) and (d) and 28 U.S.C. § 1367.   Class jurisdiction exists by virtue of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453 and 1711–1715 since there are in excess of 100,000 class members and the named proposed class representatives and proposed class members' aggregate damages exceed $5,000,000.00, exclusive of interest and costs.   Minimal diversity exists between the parties with residency in different states.   The jurisdictional requirements of the state Magnuson–Moss Act claims alleged herein as set out in 15 U.S.C. § 2310(d)(1)(A) are satisfied by CAFA diversity jurisdiction with respect to such state law claims.

7. The defendants are persons under this jurisdiction's long-arm statute.   In the United States, VWGoA acts as the alter ego and/or agent of VWAG and Audi AG as well as the warrantor with respect to the class vehicles.   *In personam* jurisdiction exists over the defendants under this jurisdiction's so-called "long arm statute."   The defendants directly and through their agents regularly transact business and otherwise derive substantial revenue in this jurisdiction and throughout the entire United States.   The defendants also conduct continuous and systematic economic activities in this

---

[4] USA Warranty and Maintenance booklets for class vehicles have maintenance schedules that extend to 120,000 miles.  There is no scheduled maintenance or replacement recommended for class engine timing chain systems during this mileage or time period.

4

jurisdiction and throughout the United States.  The defendants intentionally and purposefully placed their vehicles and/or components in the stream of commerce in this jurisdiction and throughout the United States.  Subjecting the defendants to *in personam* jurisdiction in this jurisdiction does not violate the defendants' due process rights and comports with requirements of fair play and substantial justice.

8. Venue is conferred by 28 U.S.C. § 1391 as the defendants regularly and purposefully conducted business in this judicial district and a substantial part of the events giving rise to the claim occurred in this judicial district.

**The Parties**

9. (a) Plaintiff Panepinto is an adult individual who purchased a class vehicle equipped with a 2.0L TSI engine from an authorized Volkswagen dealer.  Panepinto resides in Bayside, New York.  Panepinto's class vehicle (a 2009 Jetta) sustained severe engine damage related to the timing chain tensioner failure in March 2016.  Panepinto incurred considerable expense repairing his vehicle's engine.  Panepinto lost the use of his class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation.

(b) Plaintiff Swihart is an adult individual who purchased a used class vehicle equipped with a 2.0L TSI engine from an authorized Audi dealer in late 2011 that was covered under an existing warranty.  Swihart resides in Escondido, California.  Swihart's class vehicle (a 2009 Audi A4 Avant) sustained severe engine damage related to the timing chain tensioner failure in February 2016.  Swihart incurred considerable expense repairing his vehicle's engine.  Swihart lost the use of his class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation.

(c) Plaintiff Lopez is an adult individual who purchased a used Audi class vehicle equipped with a 2.0L TSI engine (a 2009 A4 Quattro).  Lopez resides in Lutz, Florida.  Lopez's class vehicle sustained severe engine damage related to the timing chain tensioner failure in December of 2015.

5

Lopez incurred considerable expense repairing his vehicle's engine.  Lopez lost the use of his class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation.

(d) Plaintiff Hosier is an adult individual who purchased a used class vehicle equipped with a 2.0L TSI engine from an authorized Volkswagen dealer with a certified pre-owned warranty in August of 2012.  Hosier resides in Sparrows Point, Maryland. Hosier's class vehicle (a 2010 Tiquan) sustained severe engine damage related to the timing chain tensioner failure in January 2016.  Hosier incurred considerable expense repairing the vehicle's engine.  Hosier lost the use of his class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation.

(e) Plaintiff Oles is an adult individual who purchased a class vehicle equipped with a 2.0L TSI engine from an authorized Volkswagen dealer.  Oles resides in Jacksonville, North Carolina.  Oles' class vehicle (a 2008 Passat) sustained severe engine damage related to the timing chain tensioner failure in 2012.  Oles incurred considerable expense repairing her vehicle's engine.  Oles lost the use of her class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation.

(f) Plaintiff Scott is an adult individual who purchased a new class vehicle equipped with a 2.0L TSI engine from an authorized Volkswagen dealer.  Scott resides in Columbus, Ohio.  Scott's class vehicle (a 2011 VW GTI) sustained severe engine damage related to the timing chain tensioner failure in January 2016.  Scott incurred considerable expense repairing his vehicle's engine.  Scott lost the use of his class vehicle during substantial periods of time and has incurred expenses in obtaining alternative transportation

10. (a) Defendant VWAG is a duly organized German corporation with a principal place of business in Wolfsburg, Germany.  VWAG designed, manufactured and tested the class engine incorporated in class vehicles including but not limited to the CC, Beetle, EOS, Golf/GTI, Jetta, Passat,

6

Sports Wagon and Tiguan.  VWAG drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied class vehicles.

(b) Defendant Audi AG a duly organized German corporation with a principal place of business in Ingolstadt, Germany.  Audi AG designed, manufactured and tested the class engines incorporated in class vehicles including but not limited to the A3, A4, A5 and Q5.  Audi AG drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied class vehicles.

(c) Defendant VWGoA is a duly organized New Jersey corporation with a principal place of business at 2200 Ferdinand Porsche Drive, Herndon, Virginia A 20171.  VWGoA manufactures, imports, distributes and/or sells Volkswagen and Audi motor vehicles including all class vehicles and also acts as the authorized representative of VWAG and Audi AG in the United States.  VWGoA drafted and published the owner's manual and USA Warranty and Maintenance manual that accompanied class vehicles and acted, and continues to act, as the warrantor of vehicles constructed by all defendants sold in the United States.

(d) At all relevant times, VWGoA acted as an authorized agent, representative, servant, employee and/or alter ego of VWAG and Audi AG performing activities concerning but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Volkswagen and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction.  VWAG is the parent company of VWGoA.

**Class Action Allegations**

11. Proposed class representatives bring this proposed action pursuant to Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of themselves and all members of the proposed Class and subclasses (or any other class authorized by the Court) defined as follows:

**Nationwide Class**: All owners and former owners, lessees and former lessees of class vehicles who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, the defendants' counsel and all respective immediate family members of the excluded persons and entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**New York Class:** All owners and former owners, lessees and former lessees of class vehicles, who are (or were) New York residents, who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, the defendants' counsel and all respective immediate family members of the excluded persons and entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**California Class:** All owners and former owners, lessees and former lessees of class vehicles who are (or were) California residents who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Ohio Class:** All owners and former owners, lessees and former lessees of class vehicles who are (or were) Ohio residents who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**Florida Class:** All owners and former owners, lessees and former lessees of class vehicles who are (or were) Florida residents who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members").  Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above.  Also excluded from the proposed class are any and all claims involving personal injury.

**North Carolina Class:** All owners and former owners, lessees and former lessees of class vehicles who are (or were) North Carolina residents who sustained monetary loss and/or diminution of class vehicle value resulting from the defendants' conduct as described in this complaint (hereinafter "proposed class members"). Excluded from the proposed class are the defendants together with their officers, directors, employees, assigns, and successors, the Court, Court staff, defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the proposed class are any and all claims involving personal injury.

## Numerosity of the Class: Fed. R. Civ. P 23(a)(1).

12. The proposed class is so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are in excess of approximately 250,000 class vehicles imported into and/or manufactured in the United States. Although the number, location and identity of all proposed class members can not be presently ascertained, this information is obtainable through discovery from the defendants.

## Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3).

13. Common questions of law and fact exist as to all members of the proposed class and predominate any and all issues of law and fact affecting individual members of the proposed class. These issues include but are not limited to:

(a) Whether class engines were defectively designed or manufactured, including workmanship and materials, so as to subject the engine to premature failure of the timing chain system;

(b) Whether class engines sustained damage directly or indirectly by premature failure of the timing chain system;

(c) Whether class vehicles were sold with an owner's manual and/or USA Warranty and Maintenance manual that incorporated incorrect inspection and service intervals for the timing chain system;

(d) Whether the defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that class vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(e) Whether the defendants breached their implied warranties in that class vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(f) Whether the defendants intentionally or negligently misrepresented material facts concerning the characteristics of class engines;

(g) Whether the defendants committed unfair and deceptive business act practices by failing to inform owners of class vehicles prior to purchase and/or during the post-sale express warranty period that the timing chain system (and particularly the timing chain hydraulic tensioner) was defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety hazard;

(h) Whether the defendants were unjustly enriched by their warranty breaches and deceptive and/or unfair conduct described in this complaint;

(j) Whether proposed class members are entitled to monetary damages and injunctive relief pursuant to Rule 23(b)(2);

(k) Whether the Court should establish a constructive trust funded by the benefits conferred upon the defendants by their wrongful and unlawful conduct; and,

(l) Whether proposed class members are able to economically afford individual litigation against the defendants.

**Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3).**

14. The proposed class representatives' claims and defenses are typical of the claims and defenses of proposed class members. Class claims arise out of ownership or lease of class vehicles as

10

defined in ¶ 1. The defendants in this proposed action have no claims or defenses unique to or different from the proposed class representatives.

**Adequate Representation: Fed. R. Civ. P. 23(a)(4).**

15. The proposed class representatives currently own their respective class vehicles and have no conflicting interests with any other proposed class member. Proposed class representatives will fairly and adequately protect the interests of the proposed sub-classes. Proposed class representatives' claims and the proposed class members' claims are so interrelated that the interests of the proposed class members will be fairly and adequately protected in their absence. Proposed class counsel have, in aggregate, over 60 years of experience concentrating in complex automotive products liability, and both have been appointed class counsel in other proceedings.

**Superiority of a Class Action: Fed. R. Civ. P. 23(b)(3).**

16. Maintenance of a class action in one court is the most economical procedural device to litigate the class vehicle and class engine claims for class vehicle owners and the defendants. Prosecution of separate actions by individual members of the class could create risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class as recognized by Fed. R. Civ. P. 23(b)(1)(A).

17. Prosecution of separate actions by individual members of the class could create risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of the other members of the class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

18. There is a substantial likelihood that the defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the class, thereby making appropriate

final injunctive relief or corresponding declaratory relief with respect to the class as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

19. Questions of law and fact common to members of the class predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy as recognized by Fed. R. Civ. P. 23(b)(3).

**Class Engine Timing Chain System Defect**

20. If designed and manufactured correctly, engine timing chain systems should last a minimum of 120,000 miles in a modern automobile such as the class vehicles. This is demonstrated by the defendants' USA Warranty and Maintenance pamphlet accompanying class vehicles, other engines manufactured by the defendants incorporating a timing chain system and performance of comparable competitor vehicles.

21. Class engines use a hydraulic timing chain tensioner actuated by engine oil pressure to regulate tension on the timing chain tensioning rail that applies tension to the timing chain. This tension keeps the timing chain from jumping the teeth on the sprockets that are attached to the camshafts and crankshaft and maintains synchronization between rotating engine components including the cylinder valves and pistons. Without proper timing chain tension and synchronization, the engine will run very poorly (if at all) and/or, if sufficient chain skip and mis-synchronization occurs, its failure to function properly will cause cylinder valves and pistons to collide, resulting in severe internal damage to the engine.

22. On July 23, 2012, VWGoA released a Technical Service Bulletin describing symptoms associated with impending engine timing chain system failure and/or actual failures by describing the symptoms as "Engine Rattling Noises after Start, Engine Doesn't Start, timing Chain Slipped." This bulletin superseded a similar Technical Service Bulletin concerning slipped timing chain issues issued by VWGoA on December 22, 2011. The dates of these service bulletins and the lead time necessary to

12

investigate the failures and redesign the chain tensioner and chain demonstrate that the defendants were aware of defects in the timing chain system as early as 2009.

23. The timing chain system incorporated in class engines is depicted in "Figure 1."



**FIGURE 1: CLASS ENGINE TIMING CHAIN ASSEMBLIES[5]**

---

[5] © 2008 Volkswagen Group of America, Inc.

24. The defendants redesigned the timing chain tensioner and timing chain incorporated in class engines by early 2011 (if not earlier) and commenced installation of the redesigned components in 2.0L TSI engines constructed in approximately January of 2012.  The redesigned tensioner was given a new part number and is visually and mechanically different from the previous model tensioner.[6]  *See* Figure 2 depicting the original timing chain tensioner on right and revised tensioner on the left. *See* also Figure 4, *infra*, depicting the original timing chain design on the right and the revised chain on the left.



**FIGURE 2: NEW TENSIONER IS ON THE LEFT; OLD TENSIONER IS ON THE RIGHT**

---

[6] It appears there were several versions of the 2.0L TSI timing chain tensioners. Previous timing chain tensioner versions were assigned part numbers 06H-109-467-N, 06H-109-467-AB and 06H-109-467-T.

25. The original timing chain tensioner design incorporated in class engines constructed prior to approximately January of 2012 uses a sintered metal pawl approximately 5/16" in length to engage teeth cut into the top of the tensioner piston to maintain minimum tensioner force on the timing chain tensioning rail when the engine is shut off and pressurized engine oil is no longer forcing the tensioner piston outward.  Sintered metal is a type of metal that has undergone a sintering process, in which powdered metal is directly turned into forged metal by being heated beyond its melting point until the particles form a molecular bond, as opposed to use of liquid metal in the forging process.  Metals such as iron, copper, and aluminum are commonly turned into sintered metal.

26. Defendants' sintered pawl is weaker than other forged metal and prematurely fails.  After approximately 50,000 miles, the teeth of the sintered metal pawl become sufficiently worn and/or distorted and are no longer capable of properly engaging the tensioner piston allowing the piston to retract into the tensioner housing.  *See* Figure 3 (tensioner pawl removed from failed 2.0L TSI timing chain tensioner).  When the engine is shut off and the oil pressure bleeds off, there is no longer adequate minimum timing chain tension when the engine is restarted.  When this condition occurs, the timing chain jumps one or more teeth on the camshaft sprockets causing the camshafts to fall out of synchronization with the crankshaft.

27. Prior to manufacturing and then distributing a new part, defendants perform substantial field inspections and quality review of vehicles in service to determine the root cause and diagnosis of a problem, and then prepare draft and final specifications and bid the parts out.  All of this takes at least twelve months of lead-time under normal circumstances.  The defendants, therefore, knew or should have known at least in 2009 or early 2010 that the timing chain system in class engines was defective and would prematurely fail as evidenced by the fact that, by February 2011, the defendants had redesigned the 2.0L TSI tensioner and timing chain to correct deficiencies they uncovered in the system.  In approximately August of 2011, the original 2.0L TSI tensioner and chain part numbers

were superseded to reflect the fact that the components had been redesigned and the original parts were no longer available. Commencing in approximately January of 2012, all 2.0L TSI engines incorporated the new tensioner and chain designs described in this complaint.

28. The revised timing chain tensioner uses a spring steel clip that fits around the circumference of the tensioner piston to maintain tensioner piston position when the engine is not operating. *See* Figure 2.



**FIGURE 3: WORN PAWL FROM ORIGINAL TIMING CHAIN TENSIONER DESIGN**

29. There are multiple blogs and websites maintained by automotive enthusiasts who have shared their class engine timing chain failure with other class vehicle owners and individuals. These sites have hundreds of entries and thousands of viewings concerning failed timing chain systems in

class   engines.   *See*   http://www.golfmk6.com/forums/showthread.php?t=47128.[7]      Independent

Volkswagen and Audi vehicle repair shops also have posted a description of the timing chain system

failures on their websites. *See* http://www.minhsautocare.com/tsi-timing-chain/.[8]



**FIGURE 4: NEW CHAIN DESIGN IS ON THE LEFT, OLD DESIGN IS ON THE RIGHT**

---

[7] Last reviewed on March 22, 2016.
[8] Last reviewed on March 22, 2016.

**Complaints to the National Highway Traffic Safety Administration**

30. The National Highway Traffic Safety Administration ("NHTSA") Office of Defects Investigation ("ODI") maintains a database of complaints filed by consumers concerning defects in their motor vehicles and vehicle equipment.  The NHTSA-ODI website allows consumers to "identify and report problems you might be having with your vehicle, tires, equipment or car seats." *See* https://www-odi.nhtsa.dot.gov/ivoq/ (last accessed March 18, 2016) ("If you think you have a problem, we want you to tell us about it.").  A sampling of the numerous complaints submitted by owners of one model of class vehicles (Tiquan) and reported to the NHTSA demonstrates that the timing chain defect is widespread and constitutes an unreasonable safety hazard:[9]



**Date Complaint Filed:** 07/11/2013
**Component(s):** ENGINE **Consumer Location:** PURCELL, OK
**Date of Incident:** 07/10/2013
**NHTSA ID Number:** 10524505

All Products Associated with this Complaint ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2009 |

Details ▲

**Crash:** No          **Fire:** No          **Number of Injuries:** 0          **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGAV95N29W...

SUMMARY:

TAKING OFF AFTER GETTING FUEL CAR START TO IDLE ROUGH WHEN SLOWING DOWN. DROVE DIRECTLY TO DEALERSHIP LESS THAN A MILE WHERE THE CAR BARELY MADE IT INTO THE SERVICE AREA AND CHECK ENGINE LIGHT CAME ON. TIMING CHAIN BROKE AND BLEW ENGINE. VEHICLE HAS BEEN PERFECTLY MAINTAINED BY DEALER. IT APPEARS TO BE A RECURRING PROBLEM BASED ON INTERNET RESEARCH. FORTUNATELY, I WAS NOT DRIVING ON THE INTERSTATE AS NORMAL AT THAT TIME OF DAY. *TR

---

[9] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is only added to a public NHTSA database only after it removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

19

\*              \*              \*

**Date Complaint Filed:** 12/19/2015                          **Date of Incident:** 07/06/2015
**Component(s):** POWER TRAIN                                 **NHTSA ID Number:** 10811243
**Consumer Location:** HOUSTON, TX
**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2009 |

**Details** ▲

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGAV75N69W...

SUMMARY:

WHILE DRIVING WITH MY FOUR YEAR OLD IN THE BACKSEAT OF THE CAR, THE CAR SUDDENLY MISFIRED AND THE ENGINE ROUGH IDLED. THE CAR STALLED AT INTERSECTIONS AND IN THE MIDDLE OF THE ROAD.  WE ALMOST GOT INTO AN ACCIDENT AS WE WERE DRIVING DOWN A CITY STREET, AS CARS BEHIND US HAD TO SWERVE OUT THE WAY WHEN OUR ENGINE STALLED. WE TOOK IT TO THE MECHANIC IMMEDIATELY, AS IT WAS CLEARLY HAZARDOUS TO HAVE ON THE ROAD, AND FOUND THAT A PISTON HAD MISFIRED AND STRETCHED THE TIMING CHAIN. THE CAR, A VW TIGUAN FROM 2009, WAS ONLY 6 YEARS OLD WHEN THIS EVENT OCCURRED.

\*              \*              \*

**Date Complaint Filed:** 11/18/2015                          **Date of Incident:** 10/24/2015
**Component(s):** ENGINE , POWER TRAIN                        **NHTSA ID Number:** 10794681
**Consumer Location:** THE VILLAGES, FL
**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2009 |

**Details** ▲

**Crash:** No    **Fire:** No    **Number of Injuries:** 0    **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGAV75N99W...

SUMMARY:

ON OCT. 24, 2015 WHEN I TRIED TO START MY CAR, IT SHOOK, IDLED ROUGHLY AND STALLED. I TRIED AGAIN AND IT WOULDN'T START. I HAD THE CAR TOWED TO MY VOLKSWAGEN DEALER. THEY CHECKED IT AND TOLD ME THE TIMING CHAIR HAD BROKEN CAUSING CATASTROPHIC DAMAGE TO THE ENGINE. THE ESTIMATE FOR REPAIRS WAS $4952.29. AND IF THE ENGINE HAD TO BE REPLACED, IT WOULD BE $6500. VOLKSWAGEN OF AMERICA GROUP WOULD PAY NOTHING TOWARD THE REPAIR CLAIMING IT WAS OUT OF WARRANTY. (THE POWER TRAIN WARRANTY WAS 5 YEARS/60,000 MILES.) THE CAR HAD 49,000 MILES,

BUT WAS OVER THE 5 YEAR TIME PERIOD. BUT A TIMING CHAIN SHOULD BE GOOD FOR THE LIFE OF THE CAR; UNLESS THERE IS A DEFECTIVE PART. YOU HAVE A TSB (TB-15-12-01 -NHTSA ID NUMBER: 10045560) ON THE "TENSIONER" WHICH CAUSES THE CHAIN TO BECOME LOOSE, SKIP AND BREAK. MOREOVER, THERE ARE NUMEROUS COMPLAINTS ON YOUR SITE ABOUT THIS EXACT ISSUE. VOLKSWAGEN FAILED TO NOTIFY CUSTOMERS OF THIS DEFECT AND THERE WAS NO RECALL. THIS IS A TICKING TIME BOMB THAT CAN RESULT IN A SERIOUS ACCIDENT. THE DAY BEFORE THIS HAPPENED, I WAS TRAVELLING ON THE FLORIDA TURNPIKE FOR 8 HOURS AT THE POSTED SPEED OF 70 MPH. IF THE CHAIN HAD BROKEN DURING THAT TIME, IT COULD HAVE RESULTED IN A FATAL ACCIDENT INVOLVING ME AND/OR OTHERS. WHY HASN'T THERE BEEN A RECALL? WHY SHOULD VOLKSWAGEN BE ALLOWED TO PUT MY LIFE AND THE LIVES OF OTHERS AT RISK? WHY SHOULD I HAVE TO PAY FOR VOLKSWAGEN'S NEGLIGENCE WHEN THEY WERE AWARE OF THIS ISSUE FOR ALMOST 3 YEARS? THIS DEFECT HAS THE POTENTIAL TO KILL. DOES SOMEONE HAVE TO DIE BEFORE  YOU WILL TAKE ACTION TO REQUIRE VOLKSWAGEN TO FIX THIS PROBLEM?

\*     \*     \*

**Date Complaint Filed:** 08/28/2015                    **Date of Incident:** 08/21/2015
**Component(s):** POWER TRAIN                    **NHTSA ID Number:** 10760009
**Consumer Location:** OTTUMWA, IA

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2009 |

**Details** ▲

**Crash:** No          **Fire:** No          **Number of Injuries:** 0     **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGBV95N29W...

SUMMARY:

WHILE DRIVING ON ROAD APROX. 40MPH THE VEHICLE SUDDENLY STOPPED RUNNING-HAD TO COAST TO SIDE AND TOW IT.WHEN TOWED TO VW DEALER -THEY SAID TIMING CHAIN TENSIONER FAILED AND IT'S COMMON PROBLEM.THEY EVEN HAD TSB FOR THAT.WHY THEY DON'T RECALL THIS SINCE THEY ARE AWARE OF IT.IF I WAS AT HIGHER SPEED ON INTERSTATE,I WOULD BE IN BIG TROUBLE.

\*     \*     \*

| | |
|---|---|
| **Date Complaint Filed:** 01/22/2015 | **Date of Incident:** 12/09/2014 |
| **Component(s):** ENGINE | **NHTSA ID Number:** 10678414 |
| **Consumer Location:** ARVADA, CO | |

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2010 |

Details ▲

**Crash:** No      **Fire:** No      **Number of Injuries:** 0      **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGBV7AX5AW...

SUMMARY:

DRIVING ON FREEWAY AT 70 MPH AND EXPERIENCED FAILURE OF TIMING CHAIN TENSIONER. CAM SKIPPED CHAIN AND CAUSED PISTONS TO IMPACT VALVES. TOTAL AND COMPLETE ENGINE FAILURE THAT WAS SUDDEN AND UNEXPECTED AT HIGHWAY SPEED. MY RESEARCH FINDS THAT VW IS AWARE OF THIS PROBLEM BUT WILL NOT ISSUE A RECALL. *TR

*                              *                              *

| | |
|---|---|
| **Date Complaint Filed:** 08/16/2014 | **Date of Incident:** 03/05/2014 |
| **Component(s):** ENGINE | **NHTSA ID Number:** 1065753 |
| **Consumer Location:** Parma, OH | |

**All Products Associated with this Complaint** ▲

| Vehicle Make | Model | Model Year(s) |
|---|---|---|
| VOLKSWAGEN | TIGUAN | 2009 |

Details ▲

**Crash:** No      **Fire:** No      **Number of Injuries:** 0      **Number of Deaths:** 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** WVGAV75N19W...

SUMMARY:

AT SLOWER SPEEDS, IDLE, COMING TO A STOP AND ACCELERATING THE ENGINE SPUTTERS CAUSING A HAZARDOUS SITUATION. THIS IS A RESULT OF THE FAILURE OF THE TIMING CHAIN TENSIONER. VW HAS CREATED IMPROVED REPLACEMENT PARTS BUT HAS NOT INFORMED ANY CUSTOMERS. ALSO THE VW TIGUAN OWNERS MANUAL CLAIMS THAT THE TENSIONER IS LIFETIME AND NEED NO MAINTENANCE. EVENTUALLY THE SPROCKET WHEELS BECOME SO WORN THAT THE CHAIN JUMPS AND DESTROYS THE PISTONS/HEADER/ENGINE. FAILURE USUALLY HAPPENS ABOVE THE 60,000 MILE POWERTRAIN LIMITED WARRANTY. VW AMERICA IS AWARE OF THE ISSUE BUT CLAIMS "LIKE ANY COMPONENT ON ANY VEHICLE, IT'S STILL POSSIBLE FOR IT TO FAIL". THEY KNOW THIS IS A SERIOUS HAZARD, THEY HAVE A FIX AND THEY DO NOT INFORM CUSTOMERS. *TR

**Tolling of the Limitations Period**

31. The fraudulent conduct of the defendants tolls any applicable statutes of limitations since the fraudulent misrepresentations concerning the true cause of failures in class vehicles was an inherently unknowable fact given the technical nature of the class vehicle design and manufacturing defects, including materials and workmanship.

32. Class vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials and workmanship defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for class vehicles.

33. The statutory and case law of California, Florida, Maryland, New York, North Carolina and Ohio, together with the doctrine of equitable tolling and/or the discovery rule, toll the applicable statutes of limitations for all class vehicles because of the defendants' fraudulent conduct, including but not limited to concealment of class vehicle defects and omission of material facts.

34. Some proposed class members relied on the defendants' fraudulent misrepresentations concerning the cause of class engine failures and therefore delayed bringing suit against the defendants. These misrepresentations relate to the fact that, in reality, class engines were failing due to design, manufacture, materials and/or workmanship defects. The defendants, however, fraudulently attributed the failings of class vehicle timing chain systems to other factors and/or exculpating conditions for which the defendants had no responsibility.

35. The defendants are estopped from asserting that statutes of limitations were running for the duration of time class members relied on the defendants' fraudulent representations.

36. The defendants are equitably estopped from asserting the statutes of limitations have run against the claims of class members.

23

**Further Allegations**

37. The defendants fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed subclass members the defects in the class engines even though the defendants knew or should have known of design and manufacturing defects in class vehicles if the defendants had adequately tested class engines.

38. The defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing extensive irreversible premature performance degradation in class engine timing chain systems shortly after production of the class vehicles commenced.  Defendants engaged in extensive field research and quality investigations and analysis before redesigning the specifications for the defective part, rebidding the new part and manufacturing and distributing the new part.  In addition, defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects which can cause a safety issue and report them within five (5) days of learning of them.  The defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

39. The defendants failed to inform class vehicle owners prior to purchase or during the express warranty period that their engine timing chain system was defective and would fail shortly after the express warranty period expired.  The defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of defects in the class engine.

40. The defendants also failed to inform class vehicle owners at the time of purchase that the timing chain system in their class vehicle's engine had been inadequately tested prior to placing the car in production and the time of vehicle sale.

41. The defendants also failed to inform class vehicle owners that there had been several significant subsequent tensioner and chain design improvements as described in this complaint made to the engine timing chain system that reduced and/or eliminated premature timing chain tensioner failure

24

while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service."[10]  Specifically covered by this powertrain limited warranty were "all internal [engine] parts" including the engine timing chain system.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

42. The defendants knew at least one year prior to February of 2011 (the date the original tensioner and chain part numbers were redesigned) that class engines were experiencing premature engine timing chain system failures.  Despite this knowledge, the defendants continued to sell class vehicles with a timing chain system that was defective.  This knowledge is imputed to all defendants because VWGoA was monitoring warranty claims and class vehicle performance in the United States, and reporting back to its parent companies located in Germany.

43. The proposed class representatives and proposed class members had valid and binding warranties and contracts with the defendants and were reasonably expected by the defendants to use their respective class vehicles in the manner in which passenger motor vehicles were used.

44. The proposed class representatives and proposed class members complied with all warranty and contractual obligations including all warranty, warranty notice, maintenance and product use obligations for their respective class vehicles. The proposed class representatives and proposed class members operated their class vehicles under normal anticipated conditions in noncommercial environments.

---

[10] Audi vehicles were covered by a general vehicle warranty of "4 years or 50,000 miles, whichever occurs first."

25

45. The defendants timely received the proposed class representatives' breach of warranties notice through authorized representatives and suffered no resulting prejudice.  The proposed class representative contacted VWGoA through an authorized dealership.

46. The proposed class representatives were informed by representatives of VWGoA that VWGoA would not provide assistance in repairing class engines because the vehicles were outside of the express warranty period.

47. The defendants refused to fully reimburse or compensate the proposed class representatives for vehicle repair expenses or provide a suitable substitute or replacement vehicles.  Although their vehicles' timing chain system failure occurred outside the unilateral express warranty period (which was neither seen nor bargained for prior to purchase), the proposed class representatives' class vehicles exhibited unmistakable symptoms (known only by the defendants) of degradation and impending premature failure within the express warranty period.

48. Despite actual and constructive knowledge of class vehicle defects as described in this complaint, the defendants failed to cure class vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

49. Through no fault of their own, the proposed class representatives and proposed class members did not possess sufficient technical expertise to recognize symptoms of impending timing chain system failure.  This information, however, was well known to the defendants, but not revealed.

50. The proposed class representatives relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of the defendants at the time of purchase, including but not limited to the useful and expected life of class vehicles and the recommended class vehicle maintenance program.

51. The defendants' misrepresentations and fraudulent statements were received by the respective proposed class representatives prior to and at the point of their class vehicle purchase.

26

These representations were made by Volkswagen dealers referencing publications concerning class vehicles including the owner's manual and the USA Warranty and Maintenance pamphlets.   The representations created a reasonable belief the useful life expectancy of class vehicles without a major engine failure was in excess of 120,000 miles.   These representations specifically related that the engine timing chain system was a non-maintenance engine component.

52. The defendants actively concealed the true reasonably expected duration of class vehicle components, including but not limited to the timing chain system, from the proposed class representatives and all class vehicle purchasers.   The defendants intentionally failed to inform class vehicle purchasers that class vehicles incorporated a defective and/or improperly tested timing chain system that would prematurely fail within the reasonably expected useful life of the vehicle.

53. The defendants intentionally failed to inform class vehicle purchasers that the timing chain system incorporated in class vehicles results in higher operational costs than alternative conventional timing chain systems or other competitive technology because the timing chain system prematurely fails within the reasonably expected useful life of the vehicle.

54. The defendants actively and fraudulently concealed the existence of class vehicle design and manufacture defects (including defects covered under class vehicle warranties concerning materials and workmanship) and that the owner's manual accompanying class vehicles incorporated improper maintenance recommendations and maintenance intervals.

55. The proposed class representatives and class members did not learn their respective class vehicle was defectively designed and manufactured until after their timing chain systems failed.

56. The defendants' customer service telephone representatives made false and fraudulent representations to class members as to the cause and existence of defects in class vehicles although the service representatives received hundreds of consumer complaints that class vehicles prematurely failed.   The defendants' employees falsely represented certain conditions for which the defendants

27

were not responsible as the basis for the failures that were in fact caused by a defect in materials, manufacturing and design.  They falsely stated that defendants were not responsible for the resulting class vehicle failures and/or denied the existence of known class vehicle defects.  These excuses included use of improperly formulated or stale gasoline, incorrect engine oil, driving conditions and other convenient excuses.

57.  Authorized  Volkswagen  and  Audi  dealers  did  not  have  knowledge  of  and/or  were counseled  not  to  admit  that  any  defects  existed  in  class  vehicles  or  that  improper  maintenance recommendations were incorporated in the owner's manual. Volkswagen and Audi dealers  (who also had a vested financial interest in concealing and suppressing the actual cause of class vehicle failures) improperly  blamed  vehicle  failures  on  certain  conditions  for  which  the  defendants  would  not  be responsible and/or denied the existence of defects in the timing chain system.

58. The defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that class vehicles were defective with respect to their timing chain system, suffered from extensive irreversible premature performance degradation during the warranty period  and  did  not  have  a  normal  and/or  reasonable  useful  life  before  sales  of  class  vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including the proposed class representatives and proposed class members.  The proposed class representatives and proposed class members were ignorant of this technical information through no fault of their own.

59. The defendants acted to conceal the timing chain system defects during the warranty period so that repair costs would be shifted to the proposed class representatives and proposed class members once the warranty expired and the timing chain system failed.

60. Although the defendants knew defects in class vehicles caused premature failure of the timing chain system, the defendants knowingly and actively concealed material information from

28

prospective purchasers and actual purchasers with the intent to deceive purchasers and promote class vehicle sales.

61. The defendants' knowledge of class vehicle defects was derived from warranty claims, claims supervisors, customer complaints and monitoring of performance of class vehicles by VWGoA quality assurance employees.  Additionally, the number of replacement components and subsequent component revisions would have placed the defendants on notice of class vehicle defects.  Knowledge of class vehicle defects is further imputed to the defendants prior to sale of certain model year class vehicles because predecessor models using identical timing system components were also prematurely failing within their reasonably expected life.  The defendants elected to place into the stream of commerce class vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the timing chain system.

62. Additional information supporting allegations of fraud and fraudulent conduct is in the control of the defendants.  This information includes but is not limited to technical root cause analyses, communications with class vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' timing chain tensioner was defective.

63. Material information fraudulently concealed and/or actively suppressed by the defendants includes but is not limited to class vehicle defects described in the preceding paragraphs.

64. Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including the proposed class representatives and proposed class members) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.  In fact, class vehicles actually contained a known timing chain system defect that would severely affect the useful life of the vehicle.

65. The defendants (and particularly the sales and marketing executives at VWGoA) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that class vehicles would last over 120,000 miles or ten years before experiencing timing chain system failure.  Material information was fraudulently concealed and/or actively suppressed in order to protect the defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit VW and Audi's brand disparagement.

66. The defendants had a duty to disclose to class vehicle owners that there were materials and manufacture defects in class vehicles and that the owner's manuals set forth the wrong maintenance recommendations and maintenance intervals.

67. This duty arose because the defendants knew that there were defects in the vehicles and inaccuracies in the owner's manuals that affected vehicle operation and safety while class vehicle owners were not, and could not reasonably be, cognizant of these defects and dangers.

68. The defendants continuously and affirmatively concealed the actual characteristics of class vehicles from the proposed class representative and other purchasers.  The defendants breached their affirmative duty of disclosure to class vehicle owners (and particularly to owners who inquired as to the cause of class vehicle failures). [11]

69. The defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of defects in class vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

70. The warranties accompanying class vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws

---

[11] Since unexpected engine failure is a serious safety issue, the defendants had an affirmative duty to disclose the vehicle defects together with associated risks.

because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that class vehicles were defective, the inability of class vehicle purchasers to bargain with the defendants to increase durational warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored the defendants particularly where there were class vehicle defects known only to the defendants and the warranty unfairly shifted repair costs to consumers when class vehicles prematurely fail during their reasonably expected life), absence of effective warranty competition and the fact that class vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models identical to class vehicle except for an engine with a belt driven valve train rather than the 2.0L TSI chain driven valve train.

71. Purchasers of class vehicles reasonably expect vehicles to function well in excess of the class vehicles' durational warranties before requiring extensive expensive repairs. This is particularly true where the purchasers of class vehicles where led to believe by the defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection or maintenance for the timing chain system within this period.

72. Given the conduct of the defendants and the design, manufacture, materials and workmanship defects in class vehicles (that the defendants knew were inherently defective prior to the time of sale), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representative and proposed class members were neither knowing nor voluntary.

73. The proposed class representatives and proposed class members had an absence of any meaningful choice in the purchase of class vehicles and the contractual terms were unreasonably favorable to the defendants since the defendants were fully aware of defects in the class vehicles that

31

substantially reduced the expected useful life of the vehicle. The proposed class representatives and proposed class members were unaware of defects in the class vehicles at the time of purchase.

74. The bargaining position of the defendants for the sale of class vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers, including the proposed class representatives and proposed class members.  This is because the defendants knew there were defects in class vehicles affecting the durational operation.

75. The defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that class vehicles were inherently defective and dangerous and had been inadequately tested.

76. The defendants knew defects in class vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle.  The defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

77. The defendants unconscionably sold defective class vehicles to the proposed class representative and proposed class members without informing these purchasers that the class vehicles were defective.  In the alternative, the defendants failed to notify the proposed class representatives and proposed class members after the time of sale that the timing chain system had been redesigned and that the system in their respective vehicles should be replaced prior to the expiration of the warranty.

78. The defendants' conduct renders the vehicle purchase contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

79. The durational limitation of the express warranties accompanying the class vehicles is unreasonable and unconscionable since the defendants actively concealed known vehicle defects and

issued incorrect maintenance recommendations and maintenance intervals.  The proposed class representatives and proposed class members had no notice of or ability to detect the defects.

80. The defendants restricted the limited power train warranty (including the class engine) duration to 5 years or 60,000 miles (whichever occurs first) for class vehicles in an effort to avoid the cost of repairs because they were cognizant of class vehicle defects that existed at the time of sale.

81. Engines in competitive vehicles manufactured and sold at the time the class vehicles were manufactured and sold ordinarily last longer than warranted by the limited power train warranty accompanying class vehicles.

82. The defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal class vehicle materials defects, workmanship defects, manufacturing defects, design defects and improperly recommended maintenance.

83. The defendants are engaged in a continuing fraud concerning the true underlying cause of class vehicle failures.

84. The defendants failed to adequately test class vehicles in appropriate consumer environments prior to marketing, distribution and sale.

85. The defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. The defendants' upper level management orchestrated this wrongful conduct.

86. The proposed class representatives and proposed class members operated and maintained their class vehicles in conformity with the respective owner's manuals and provided the requisite notice to the defendants' authorized agents for warranty repair after their class vehicles failed.

87. Even if class vehicles do not fail entirely, class vehicle owners have sustained an ascertainable financial loss, including but not limited to increased maintenance costs for timing chain system inspections and/or premature replacement of the timing chain system and/or substantially

33

reduced engine performance.   Individuals who own or have owned class vehicles also sustained diminution of the resale value of their class vehicles since knowledge of problems with class vehicles became public information after the time of their purchase.

88.   The proposed class representatives and proposed class members have not received the benefit of their bargain concerning their respective purchase of class vehicles.

89. The defendants are persons within the context of the consumer protection laws of California, Florida, Maryland, New York, North Carolina and Ohio, respectively, and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to the proposed class representatives and proposed class members.

90. The defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that class vehicles incorporated defective time chain systems and were accompanied an owner's manual and USA Warranty and Maintenance pamphlet that incorporated incorrect engine service and maintenance recommendations.   Proposed class representatives and proposed class members were deceived by the defendants' conduct as described in this complaint with respect to their purchase of class vehicles.

91. The defendants violated the consumer protection laws of California, Florida, Maryland, New York, North Carolina and Ohio with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to proposed class members and proposed class members.

92. The defendants were under a duty to disclose safety defects to class vehicles as described in this complaint but failed to disclose to proposed class representatives and proposed class members the characteristics of class vehicles with respect to defects in violation of the consumer protection laws of California, Florida, Maryland, New York, North Carolina and Ohio.   The defendants' omissions (that class engines were defective and that this defect constituted a safety hazard) deceived purchasers

34

(including but not limited to proposed class representatives and proposed class members). Those disclosure omissions include the fact that class vehicle defects had a significant impact on the value, durability and future care of class vehicles. This failure to disclose additional information concerning class vehicle defects had the capacity to, and in fact did, deceive purchasers (including but not limited to proposed class representatives and proposed class members) in a material respect.

93. If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased the class vehicles or would have paid less for their vehicles since class members were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of class vehicles.

94. The defendants fraudulently, intentionally, negligently and/or recklessly concealed from proposed class representatives and proposed class members defects in class vehicles even though the defendants knew or should have known information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers including proposed class representatives and proposed class members.

95. The defendants violated the consumer protection laws of California, Florida, Maryland, New York, North Carolina and Ohio by failing to inform class vehicles owners at the time of purchase that class vehicles had known defects, that the vehicles would prematurely require major engine repairs and/or prematurely fail with resulting catastrophic failure and /or would have a significant effect on the vehicle's value.

96. As a direct result of these omissions, proposed class representatives and proposed class members purchased class vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented. These misrepresentations diminish the value and cost of vehicle

ownership while also increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase.

97. The wrongful conduct of the defendants in violation of the consumer protection laws of California, Florida, Maryland, New York, North Carolina and Ohio occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by the defendants' conduct.

**What the Omissions Were:**

98. The defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning class vehicles, including information concerning class engine timing chain system defects, in an effort to deceive purchasers as described in this complaint.  At the time of purchase, the defendants fraudulently omitted to disclose material matter regarding the defects in class vehicles, including their impact on future repairs, costs and vehicle reliability.   The defendants fraudulently concealed from the proposed representatives and proposed class members defects in class vehicles even though the defendants knew or should have known that information concerning these defects was material and central to the marketing and sale of class vehicles to prospective purchasers, including proposed class representatives and proposed class members.  The defendants concealed from proposed representatives and proposed class members during their warranty periods that a defect existed with the timing chain assembly which could have and should have been fixed during the warranty period, particularly as it was a safety issue, and defendants' withholding of this material information deprived proposed representatives and proposed class members of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

99. Proposed class representatives and proposed class members are entitled to the reasonable inference that the defendants' sales, marketing, engineering and warranty departments and their

36

executives were involved in the omissions.  This is particularly true given the defendants' recent conduct involving compliance certification and pollution control defeat devices involved in the sale of diesel powered passenger vehicles.

**The Context of the Omissions and the Manner in which they Misled:**

100. Material information was fraudulently concealed and/or actively suppressed in order to sell class vehicles to uninformed consumers (including proposed class representatives and proposed class members) premised on affirmations and representations as described in this complaint.

101. If proposed class representatives and proposed class members had been informed of defects in their class vehicles, they would not have purchased their respective class vehicles or would have paid substantially less.  If proposed class representatives and proposed class members had been made aware of the defects in their respective class vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles since each class member believed they were purchasing vehicles without major defects and were not fully informed of true characteristics and attributes of class vehicles.  If the proposed class representatives and proposed class members had been informed of the defect during the warranty period, they would have had the defective part replaced under warranty. The defendants' conduct that violated the consumer fraud statutes alleged herein deprived proposed representatives and proposed class members of that remedy.

**What the Defendants Obtained through the Fraud:**

102. Material information concerning class vehicles was concealed and/or actively suppressed in order to protect the defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement.  Purchasers believed they were obtaining vehicles as having different attributes than described and purchased and were accordingly deprived of economic value and paid a price premium for their class vehicles.  The defendants had a uniform

policy of not properly disclosing class vehicle defects in order to promote sales and increase profits as described in this complaint.

103. As a proximate and direct result of the defendants' unfair and deceptive business trade practices, proposed class representatives and proposed class members purchased class vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

**COUNT I**
**BREACH OF UNIFORM COMMERCIAL CODE § 2-313: EXPRESS WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS RESULTING IN FINANCIAL HARM**
**(On Behalf of the Nationwide Class or, Alternatively, each of the State Subclasses)**

104. Proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

105. The defendants are merchants with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by California, Florida, Maryland, New York, North Carolina and Ohio.

106. The proposed class representatives and proposed class members have established sufficient direct dealings, including but not limited to vehicle purchase, with the defendants or their agents (dealerships and technical support) to establish privity of contract with the defendants.

107. The defendants provided class members an express powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from date the vehicle was first placed in service." Specifically covered by this powertrain limited warranty were "all internal [engine] parts" including the engine timing chain system.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

108. The defendants expressly warranted to the general public, owners and lessees of class vehicles that class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used. The defendants are merchants with respect to passenger motor vehicles. The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

109. The defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of these vehicles including superior design and manufacture, safety, durability, reliability and performance when in fact class vehicle engines contained known defects in the timing chain system that severely reduced the useful life of the vehicle.

110. The defendants represented that class vehicles were of a particular standard or quality, as described in this complaint, when they in fact were not. Timing chain systems in class engines are failing far short of the expected useful life.

111. Proposed class representatives and proposed class members were not presented with an opportunity to review (let alone bargain for) the warranty provisions at the time of purchase of their class vehicles and were unaware of the defects in the timing chain system of class vehicle engines that made the respective bargaining position of the parties unequal at the time of vehicle purchase.

112. The defendants' representations (including representations made by employees of authorized retail dealers relying on specification and sales materials generated by the defendants) were made in newspapers, magazines, engine and Internet advertising together with sales literature viewed by the proposed class representatives and proposed class members.

113. The defendants received adequate notice of their breach of their express warranties and failed to cure the warranty breaches. Proposed class representatives and class members reported to the defendants the problems with and failings of the timing chains in their vehicles and requested of defendants that they cure and/or repair and/or replace the defective timing chain components. In the

39

alternative, the proposed class representatives, as indirect purchasers, were not required to issue notice of the warranty breach to the defendants and the lack of notice of warranty breach did not result in any prejudice to the defendants.

114. Proposed class representatives and proposed class members complied with maintenance recommendations for their respective class vehicle.

115. The defendants failed to remedy by replacement or repair the proposed class representatives' timing chain systems that were defective in materials and workmanship during the express warranty period although these defects were known to the defendants at that time.[12]  Class vehicles owned by the proposed class representatives and proposed class members also prematurely failed and/or experienced substantial performance diminution within the express warranty period of 5 years or 60,000 miles.

116. Proposed class representatives and proposed class members relied on the express warranties made by the defendants regarding the class vehicles on choosing to purchase their VW and Audi vehicles.  As a result, they sustained an ascertainable loss in the purchase price of their vehicles and other financial injury, including the cost for the timing chain system repairs, resulting from the breach of those warranties by the defendants.

117. Because of the timing chain system defect, class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation.

118. Proposed class representatives and proposed class members could not have reasonably discovered the defective condition of their class vehicle engines prior to failure.

_____

[12] The USA Warranty and Maintenance booklet for class vehicles recites as follows: "[r]epairs under this warranty are made free of charge. Your authorized Volkswagen dealer will repair the defective part or replace it with a new or remanufactured genuine Volkswagen part."  The Audi version of this warranty guarantee is identical except Audi inserted in place of Volkswagen.

119. The express warranty remedy set out in the warranty provisions of class vehicles fails of its essential purpose under Uniform Commercial Code § 2-719(2) and the limitation of consequential damages is unconscionable under § 2-719(3) because of the conduct of the defendants described, *supra*.

120. The defendants breached their express warranties in that class vehicles were defective with respect to engine materials, workmanship, design and manufacture.  The defendants further breached their express warranties in that the class vehicles were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that incorporated no inspection and service intervals for the timing chain system although the defendants knew these components were defective and required periodic inspection and service.

121. The defendants further breached their express warranties by failing to remedy the timing chain system defects caused by defects in materials and workmanship as required by the warranty that accompanied the respective class vehicles.  Class vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and manufacture defects which cause engine failure and failure to perform as warranted.

122. Proposed class representatives and proposed class members relied on express warranties made by the defendants concerning the class vehicles and sustained financial injury resulting from the breach of those warranties by the defendants.

123. Proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles.  The defendants' breach of their express warranties was the direct and proximate cause of the proposed class members' financial harm.

124. Wherefore, proposed class representatives and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

41

## COUNT II
## BREACH OF UNIFORM COMMERCIAL CODE § 2-314: IMPLIED WARRANTY OF MERCHANTABILITY BY THE DEFENDANTS
**(On Behalf of the Nationwide Class or, Alternatively, each of the State Subclasses)**

125.  Proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

126. The defendants are merchants with respect to passenger motor vehicles.  Class vehicles are goods within the meaning of the Uniform Commercial Code as adopted by California, Florida, Maryland, New York, North Carolina and Ohio.

127. The defendants failed to provide legally binding written notice to proposed class representatives and other class vehicle purchasers of implied warranty exclusions at time of purchase because the warranty exclusion failed to mention merchantability and was not conspicuous within the meaning of § 2-316 and therefore ineffective by law.

128. The defendants impliedly warranted to the general public, owners and lessees of class vehicles that the class vehicles were merchantable and fit for the ordinary purposes for which passenger vehicles are used.  The proposed class representatives and proposed class members purchased their respective vehicles for personal, family, and/or household use and did not engage in commercial use of their vehicles.

129. As manufacturers of consumer goods, the defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

130. To the extent privity of contract is required for purposes of the application of implied warranty, the proposed class representatives and proposed class members are third-party beneficiaries to a contract implemented by the defendants that creates an implied warranty of merchantability.

42

131. The defendants breached their implied warranties in that class vehicles were defective with respect to engine design and manufacture as described in this complaint and were unfit for the ordinary purposes for which passenger vehicles are used because of those defects which caused premature timing chain system failure and consequent damage to the engine.

132. Class vehicles are predisposed to premature failure in normal anticipated operating environments because of engine materials, workmanship, design and manufacture defects described in this complaint that existed at the time these vehicles were manufactured.

133. Class vehicles are not reliable and owners of these vehicles have lost confidence in the ability of class vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden catastrophic engine failure.  The defendants are estopped by their conduct, as described in this complaint, from disclaiming any and all implied warranties with respect to the timing chain system in class engines.

134. Proposed class representatives and proposed class members relied on implied warranties of merchantability made by the defendants regarding the class vehicles in choosing to purchase their respective class vehicles and sustained an ascertainable financial injury resulting from the breach of those warranties by the defendants.

135. The defendants received adequate notice of their breach of the implied warranty of merchantability through proposed class representatives' and proposed class members' requests for repair or replacement. In the alternative, class vehicle owners, as indirect purchasers, were not required to issue notice of the warranty breach to the defendants and any lack of notice of warranty breach did not result in any prejudice to the defendants.  The defendants declined to offer the proposed class representatives an effective remedy for their defective class engine or vehicle.

136. Even though the proposed class representatives and proposed class members complied with class vehicle engine maintenance recommendations for their respective class vehicles, their respective class vehicle engines prematurely failed because of defects in the timing chain system.

137. The proposed class representatives and proposed class members reasonably relied upon the expertise, skill, judgment and knowledge of the defendants and upon their implied warranty that class vehicles were of merchantable quality and fit for their intended use.  Class vehicles did not conform to the defendants' implied representations or warranties because of defects in the timing chain system.

138. The proposed class representatives and proposed class members had an independent legitimate consumer expectation that the class vehicles would last well in excess of 10 years and 120,000 miles before requiring any major engine repairs based on industry standards, competitor products, consumer product magazines, prior vehicle ownership and reputation of the defendants for manufacturing durable quality vehicles. There were no statements made by the defendants or their agents that contradicted or led consumers to lower their legitimate expectations at the time of purchase.

139. Proposed class representatives and proposed class members could not have reasonably discovered the defective condition of the class vehicles because the class engine defects were inside of the engine.  The defendants' breach of their implied warranties of merchantability was the direct and proximate cause of proposed class representatives' and proposed class members' financial harm. Had the class vehicles not contained defective and failing timing chains, proposed class representatives and proposed class members would not have incurred the costs of timing chain and engine repair.

140. Wherefore, proposed class representatives and proposed class members demand judgment against defendants including multiple damages, interest, costs and attorneys' fees.

44

## COUNT III
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. § 2310(d)(1(A)
### (On Behalf of each of the State Subclasses)

141. Proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

142. This claim is brought as a State law claim under 15 U.S.C. §2310(d)(1)(A) and is before this Court as a supplemental State Court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

143. Proposed class representatives and proposed class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

144. Class vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

145. The defendants are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

146. The defendants' express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Class vehicle implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by § 2308.

147. The defendants breached the express and implied warranties accompanying class vehicles as described in this complaint.

148. The Magnuson-Moss Warranty Act, provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

149. The defendants' breach of their express and implied warranties was the direct and proximate cause of the proposed class representatives and proposed class members' financial harm as more fully set out in the preceding warranty counts, and constitutes a violation of the Magnuson-Moss Warranty Act.

45

150. The proposed class representatives and proposed class members have alleged in this complaint sufficient direct dealings with the defendants or their agents (dealerships and technical support) to establish privity of contract with the defendants.  In the alternative, privity of contract is not required because proposed class representatives and proposed class members are intended third-party beneficiaries of contracts between the defendants and its dealers, specifically including implied warranties.  Authorized class vehicle dealers were not intended to be the ultimate consumers of class vehicles and have no rights under the warranty provisions accompanying class vehicles since these provisions were drafted and intended to benefit the consumer purchasers of class vehicles.

151. Affording the defendants a reasonable opportunity to cure their breach of written warranties for class vehicles would be unnecessary and futile.  The proposed class representatives and proposed class members have already attempted to secure coverage for their timing chain system and related repairs without success.

152. At the time of sale or lease of each class vehicle, the defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the class vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defects as described in this complaint.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that class vehicles resort to an informal dispute resolution procedure and/or afford the defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

153. The proposed class representatives and proposed class members would suffer economic hardship if they returned their class vehicles but did not receive the return of all payments made by them.

154. Wherefore, proposed class representatives and proposed class members demand judgment against the defendants including multiple monetary damages, interest, costs and attorney's fees.

**COUNT IV**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On Behalf of the New York Subclass)**

155. Proposed class representative Panepinto incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

156. Proposed class representative Panepinto asserts this count on behalf of himself and members of the proposed New York subclass.

157. The defendants knowingly concealed the fact that the timing chain systems in class vehicles were defective and were prone to premature failure at the time class vehicles were sold and/or leased.

158. At the time Panepinto purchased his class vehicle in November of 2011, the defendants knew that the timing chain tensioner in the vehicle was defective and would prematurely fail as evidenced by the fact that the defendants had redesigned the 2.0L TSI tensioner and timing chain more than nine months earlier to correct deficiencies in the system.  The defendants failed to inform Panepinto of the defective timing chain system in his class vehicle at the time of purchase and Panepinto had no independent knowledge of the defects.  Commencing in approximately January of 2012, all 2.0L TSI engines incorporated a newly designed tensioner and chain.

159. The defendants' practices, acts, policies and course of conduct are actionable in that the defendants actively and knowingly misrepresented to proposed class representative Panepinto and proposed New York class members at the time of purchase or lease that class vehicle engines did not contain a material defect, were in good working order and were not defective and were otherwise merchantable.

160. The defendants failed to give adequate warnings and notices regarding the contained defects and problems with the class engine timing chain system to consumers who purchased or leased

47

class vehicles despite the fact that the defendants possessed prior knowledge of the inherent defects in the timing chain system.

161. The defendants failed to disclose to proposed class representative Panepinto and proposed New York class members, either through warnings or recall notices, and/or actively concealed the fact from them that the timing chain system was defective and prone to premature failure, despite the fact that it learned of the defects as early as 2011.

162. The defendants caused proposed class representative Panepinto and proposed New York class members to expend sums of money at its dealerships and elsewhere to purchase their class vehicles and to repair and/or replace the timing chain system components, despite the fact defendants had prior knowledge of the defects at the time of placing class vehicles into the stream of commerce.

163. The defendants occasionally have admitted to some New York class vehicle owners or lessees, by their words and action, that the timing chain system should be covered by its warranties, but denied this coverage to others. The defendants thereby maintained a secret warranty practice honoring warranty coverage for some while denying it for others; thus constituting an unfair, deceptive, arbitrary and unconscionable trade practice.

164. Each and all of the aforementioned conduct is and was deceptive, false, fraudulent and constitutes an unconscionable consumer oriented practice in that defendants have, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true defective nature of the timing chain system for class vehicles.

165. In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, the defendants misrepresented and/or knowingly and intentionally concealed material facts breaching their duty not to do so.

166. Such acts by the defendants are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the vehicle. The deceptive acts and practices

48

described in this count and complaint are material.  The sale and distribution in New York of the class vehicles was a consumer-oriented act and thereby falls under the New York consumer fraud statute, General Business Law §§ 349 and 350.

167. Members of the public were deceived by and relied upon defendants' affirmative misrepresentations and failures to disclose. The defendants' wrongful conduct caused proposed class representative Panepinto and proposed New York class members to suffer injury and damages in having caused them to purchase defective vehicles and incur substantial expense to repair their defective timing chain systems that should have been repaired free of charge under the vehicles' warranties.

168. In addition to direct monetary losses, proposed class representative Panepinto and proposed New York class members have suffered injury and damages in receiving less value in their vehicle than what was promised to them by the defendants at the time of purchase.  Specifically, proposed class representative Panepinto and proposed New York class members have paid for vehicles that are now worth significantly less because of the existence of their defective timing chain systems and the damage they cause to the engines of the class vehicles.  Moreover, their vehicles are also worth less because the purchase price of the class vehicles included a warranty program that was supposed to provide free repairs for all defects in materials or workmanship occurring during the warranty period, but in fact did not.  Panepinto and proposed New York class members were thereby deprived of the value of this warranty due to defendants' fraudulent concealment.

169. A causal relationship exists between defendants' unlawful conduct and the ascertainable losses suffered by proposed class representative Panepinto and proposed New York class members. Had the defective timing chain system in the class vehicles been disclosed, consumers would have decided not to purchase the class vehicles, consumers would have paid less for the class vehicles had they decided to purchase them, or consumers would have taken affirmative steps to prevent the

catastrophic damage to their vehicles by fixing such defect during the warranty period while replacement of the defective timing chain assembly was covered.

170. Wherefore, proposed class representative Panepinto and proposed New York class members demand judgment against defendants including actual damages, statutory damages of $50 per violation, multiple damages, punitive damages, interest, costs and attorneys' fees.

**COUNT V**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
**(On Behalf of the New York Subclass)**

171. Proposed class representative Panepinto incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

172. Proposed class representative Panepinto asserts this count on behalf of himself and members of the proposed New York subclass.

173. The defendants knowingly falsely advertised, promoted, publicized, marketed and/or represented to representative Panepinto and members of the proposed New York subclass by statement, word, writing, or marketing materials that the class vehicles for purchase and/or lease, their materials, workmanship, design and manufacturing, including their engines and engine components, were of top, or at least regular commercial grade, quality and character, in good working order, non-defective, merchantable and functioning for a normal duration by industry standards.

174. Moreover, at the time and in the context of their false advertising, the defendants failed to reveal to representative Panepinto and members of the proposed New York subclass the existence of material defects and the propensity towards premature failure inherent in the class vehicles' timing chain systems of which they were aware, as so alleged in this complaint.

175. The defendants' false advertising was made in the course of their business of selling, leasing, manufacturing, providing and/or marketing their vehicles.

50

176. The defendants' false advertising regarding the quality, working order, and life of the class vehicles and their engine components were directed at New York consumers and misleading to reasonable consumers in view of its concealment of the material defects in the class vehicles' timing chain system which is a proximate cause for engine failure as so alleged in this complaint.

177. Panepinto and members of the proposed New York subclass were injured as a result of the defendants' false advertising and concealment of material facts which caused them to expend moneys to purchase or lease defective vehicles which were and are prone to timing chain and engine failings.

178. Wherefore, proposed class representative Panepinto and proposed New York class members demand judgment against defendants including actual damages, statutory damages of $500 per violation, multiple damages, punitive damages, interest, costs and attorneys' fees.

**COUNT VI**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, CAL. BUS.**
**AND PROFESSIONS CODE §§ 17200, *ET. SEQ.***
**(On Behalf of the California Subclass)**

179. Proposed California class representative Swihart incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

180. Proposed class representative Swihart asserts this count on behalf of himself and members of the proposed California subclass.

181. California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair or deceptive business practices.  The defendants' conduct as described in this complaint constitutes unlawful, unfair and deceptive business practices.

182. The defendants' breach of their express and implied warranties as described in this complaint violates § 2313 of California's Commercial Code and Cal. Civ. Code §§ 1792 *et seq*. of the Song-Beverly Consumer Warranty Act.  The defendants' conduct as described in this complaint further violates the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*.  These violations are

51

independent and unlawful unfair and deceptive business practices.

183. The defendants' sale of class vehicles without disclosing the existence of the defective timing chain systems while misrepresenting the supposed quality and reliability attributes of these vehicles is an unlawful unfair and deceptive business practice within the context of the UCL.  This conduct was unlawful, unfair and deceptive because it was intended to, and did in fact, mislead and deceive proposed class representative Swihart and proposed California subclass members.  If the defendants disclosed to proposed class representative Swihart and proposed California subclass members that class vehicles incorporated a defective timing chain system or that the system had been inadequately tested, they would not have purchased their respective vehicles or paid less for their respective class vehicle.

184. The defendants knew that if the defects in the timing chain system or inadequate testing were disclosed to the consumer public prior to purchase, consumers at large would react similarly and elect to not to purchase class vehicles.  As a result, the defendants intentionally concealed their knowledge of the timing chain system defects and their inadequate testing.

185. As a direct, proximate and foreseeable result of the defendants' unlawful, unfair and deceptive business practices, proposed class representative Swihart and proposed California subclass members sustained an ascertainable loss and actual damages in that they expended thousands of dollars to purchase the defective class vehicles, and then more to have the their defective engines repaired or replaced.  Moreover, because of the undisclosed defects, class representative Swihart and proposed California subclass members sustained a loss or diminution in the value of their vehicles.  Proposed class representative Swihart and proposed California subclass members have or will incur incidental damages attributable to the loss of use of their class vehicles while the vehicles were or will be repaired.

186. The defendants' unlawful, unfair and/or deceptive business practices caused proposed class Swihart and members of the proposed California subclass to convey money and benefits to the defendants including but not limited to the purchase price or lease payments for their vehicles together with repair costs.

187. Proposed class representative Swihart and proposed California subclass members request an order of restitution forcing the defendants to restore to them the benefits and monies they conveyed in connection with their purchase of the class vehicles and repair costs related to the defective timing chain system.

188. Wherefore, proposed class representative Swihart and proposed California subclass members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

**COUNT VII**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE §§ 1750 *ET. SEQ.***
**(On Behalf of the California Subclass) [13]**

189. Proposed class representative Swihart incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

190. Proposed class representative Swihart asserts this count on behalf of himself and the proposed California Class.

191. The defendants violated Cal. Civ. Code § 1770(a)(5) by representing that class vehicles have characteristics, uses, benefits and/or quantities which they do not possess.

---

[13] Upon the Cal. Civ. Code § 1782 notice requirements being satisfied, Swihart and members of the California subclass intend to amend this count to include monetary damages in addition to the presently requested injunctive relief. Swihart's counsel is notifying defendants by separate letter of the particular violations of the California Consumer Legal Remedies Act and requesting they correct or agree to correct the violations enumerated. If defendants fail to do so, Swihart shall amend the complaint as of right (or otherwise seek leave to amend the complaint) to include compensatory and monetary damages.

192. The defendants violated Cal. Civ. Code § 1770(a)(7) by representing that class vehicles are of a particular standard, quality, or grade, when they are not, and in particular, by supplying vehicles which contain a defect which involves a safety issue.

193. The defendants violated Cal. Civ. Code § 1770(a)(9) by advertising class vehicles with the intent not to sell them as advertised.

194. The defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

195. The defendants conducted the above-described acts or practices in transactions intended to result, or which did result, in the sale of class vehicles to customers for personal, family, or household use.

196. The defendants violated the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770 *et seq*. and committed other unfair and deceptive business practices as described in this complaint. Proposed class representative Swihart and proposed California class members request equitable and injunctive relief authorized by the Consumers Legal Remedies Act and for such additional relief as necessary.

197. Wherefore, proposed class representative Swihart and proposed California class members request judgment against the defendants, including injunctive relief set out in this complaint, together with costs and attorneys' fees.

## COUNT VIII
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT, FLORIDA STATUTES §§ 501.201 *ET SEQ.*
### (On Behalf of the Florida Subclass)

198. Proposed class representative Lopez incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

199. Proposed class representative Lopez asserts this count on behalf of himself and proposed

Florida subclass members.

200.  Proposed class representative Lopez and proposed Florida subclass members are consumers and interested parties or persons within the context of §§ 501.203(6)-(7) of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, *et. seq.* (hereinafter "FDUTPA").

201. The defendants are engaged in trade or commerce within the context of the FUDTPA, § 501.203(8).

202. Proposed class representative Lopez and proposed Florida subclass members purchased and/or leased class vehicles for personal, family or household use.

203. The defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the FUDTPA as described in this complaint.

204. The defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's timing chain system with intent that proposed class representative Lopez and proposed Florida subclass members would rely upon their misrepresentations in connection with the sale and/or advertisement of class vehicles.

205. The defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative Lopez and proposed Florida subclass members the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the timing chain system.

206. The defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representative Lopez and proposed Florida subclass members the characteristics of class vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  The defendants extensively advertised that class vehicles were superior in

construction and extolled the quality and virtues of class vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

207. The defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

208. The defendants secretly repaired some class engine to prevent dissemination of knowledge concerning class engine defects.

209. Although the defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, the defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

210. One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which the defendants were not allegedly responsible.  In fact, proposed class representative Lopez and proposed Florida subclass members complied with use and maintenance recommendations for their respective class engines, and the class engine failures were on account of the class vehicles' defective timing chain system.

211. Rather than conduct an open and fair inspection and repair procedure for all class engines, the defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of the FUDTPA.

212. The defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which proposed class representative Lopez and proposed Florida subclass members were caused to expend sums of money in purchasing and later repairing their class vehicles.  As reasonable consumers, proposed class representative Lopez and proposed Florida

56

subclass members had no reasonable way to know that class vehicles contained timing chain systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of the defendants who alone possessed the knowledge as to the quality and characteristics of the class vehicles, including the engine and timing chain system durability.

213.  If the defendants had not concealed class engine defects from proposed class representative Lopez and proposed Florida subclass members within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

214. The defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

215. The defendants violated the FUDTPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

216. The defendants violated the FUDTPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

217. The defendants further violated the FUDTPA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the engines including but not limited to the timing chain system.

218. The defendants committed unfair and deceptive business trade act practices as described in this complaint.  The defendants repeatedly violated the FUDTPA on multiple occasions with their

continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Lopez and proposed subclass members.

219.  The secret warranty programs for class engines initiated by the defendants and other wrongful conduct of the defendants in violation of FUDTPA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

220.  As a proximate and direct result of the defendants' unfair and deceptive business trade practices, proposed class representative Lopez and proposed Florida subclass members purchased class vehicles and sustained an ascertainable loss and financial harm.

221.  Proposed class representative Lopez and proposed Florida subclass members experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

222.  The conduct of the defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

223.  Wherefore, proposed class representative Lopez and proposed Florida subclass members demand judgment against the defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate Court order prohibiting the defendants from further deceptive acts and practices described in this complaint.

**COUNT IX**
**VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT,**
**MD. CODE ANN., COM. LAW §§ 13-101 *ET SEQ.***
**(On Behalf of the Maryland Subclass)**

224. Proposed class representative Hosier incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

225. Proposed class representative Hosier asserts this count on behalf of himself and members of the Maryland subclass.

226. Proposed class representative Hosier and proposed Maryland subclass members are consumers within the context of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.* (hereinafter "MCPA") who purchased and/or leased class vehicles for personal, family or household use.

227. The defendants are persons and merchants within the context of the MCPA.

228. The sale of class vehicles in Maryland constitutes trade and commerce of consumer goods within the context of the MCPA.

229. The defendants violated MCPA § 13-301(1) by representing class vehicles have characteristics, uses, benefits and/or quantities which they do not possess.

230. The defendants violated MCPA § 13-301(2) by representing class vehicles are of a particular standard, quality, or grade, when they are not.

231. The defendants violated MCPA § 13-301(3) by failing to state a material fact that deceives or tends to deceive.

232. The defendants violated MCPA § 13-301(5)(i) by advertising class vehicles without intent to sell or lease as advertised.

233. The defendants violated MCPA § 13-301(7) by selling class vehicles knowing that a service, replacement or repair was needed.

234. The defendants violated MCPA § 13-301(9)(i) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning class vehicles with the intent to deceive proposed class representative Hosier and proposed Maryland subclass members.

235. At the time Hosier purchased his certified pre-owned class vehicle in August of 2012, the defendants knew that the timing chain tensioner in the vehicle was defective and would prematurely fail because the defendants had previously redesigned the 2.0L TSI tensioner and timing chain for new vehicle models more than a year and a half earlier in an effort to correct deficiencies in the system. The defendants failed to inform Hosier of the defective timing chain system in his class vehicle at the time of purchase and Hosier had no independent knowledge of the defects.   Commencing in approximately January of 2012, all 2.0L TSI engines incorporated the newly designed tensioner and timing chain described in this complaint.

236. The defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the MCPA as described in this complaint.

237. The defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's timing chain system in connection with the sale and/or advertisement of class vehicles to the proposed class representative Hosier and the proposed Maryland subclass members.

238. The defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative Hosier and proposed Maryland subclass members the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the timing chain system.

239. The defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representative Hosier and proposed Maryland subclass members the characteristics of class vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.   The defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.   In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

240. The defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

241. The defendants secretly repaired some class engines in an effort to prevent dissemination of knowledge concerning class engine defects.

242. The defendants intended that Hosier and proposed Maryland subclass members would, in the course of their decision to expend monies in purchasing and repairing class vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet, as well as any potential defects inherent in the engine components, including the timing chain system

243. Proposed class representative Hosier and proposed Maryland subclass members complied with use and maintenance recommendations for their respective class engines.

244. Although the defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, the defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

61

245. One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which the defendants were not allegedly responsible.  In fact, it was the concealed defects in the timing chain system which caused the class engine failures.

246. Rather than conduct an open and fair inspection and repair procedure for all class engines, the defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of the MCPA.

247. Information regarding a vehicle's defective timing chain system as described in this complaint is important to consumers in that the defect causes engine failures and necessitates expensive repairs, and, hence, is likely to affect a consumer's choice of vehicle to purchase or lease. Consumers typically will reasonably rely upon the manufacturers and sellers to provide accurate information as to quality and character of the vehicle they are considering purchasing or leasing.

248. If the defendants had not concealed class engine defects from proposed class representative Hosier and proposed Maryland subclass members within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

249. The defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

250. The defendants violated the MCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

251. The defendants violated the MCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

252. The defendants further violated the MCPA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the engines, including but not limited to the timing chain system.

253. The defendants committed unfair and deceptive business trade act practices as described in this complaint.  The defendants repeatedly violated the MCPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Hosier and proposed subclass members.

254. The secret warranty programs for class engines initiated by the defendants along with other wrongful conduct of the defendants in violation of the MCPA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

255. As a proximate and direct result of the defendants' unfair and deceptive business trade practices, proposed class representative Hosier and proposed Maryland subclass members purchased class vehicles and sustained an ascertainable loss and financial harm.

256. Proposed class representative Hosier and proposed Maryland subclass members experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

257. The conduct of the defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

63

258.    Wherefore, proposed class representative Hosier and proposed Maryland subclass members demand judgment against the defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate Court order prohibiting the defendants from further deceptive acts and practices described in this complaint.

**COUNT X**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND**
**DECEPTIVE TRADE PRACTICES ACT, N.C. GEN. LAWS §§ 75-1.1 *ET SEQ.***
**(On Behalf of the North Carolina Subclass)**

259. Proposed class representative Oles incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

260. Proposed class representative Oles asserts this count on behalf of herself and members of the North Carolina subclass.

261. The defendants are engaged in designing, manufacturing, marketing, supplying and selling vehicles, business and/or commerce within the context of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Laws §§ 75-1.1 *et seq.* (hereinafter "NCUDTPA"), and committed unfair and deceptive acts and practices in the course of their business within the context of the NCUDTPA as described in this complaint.

262. The defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts.   The misrepresentations and material omissions concerned the class engine's timing chain system and were made by defendants with intent that proposed class representative Oles and proposed North Carolina subclass members would rely upon the deception, fraud, false pretense, false promise, misrepresentation and the knowing

concealment, suppression and omission of material facts in connection with the sale and/or advertisement of class vehicles.

263. The defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative Oles and proposed North Carolina subclass members the required maintenance and/or maintenance intervals of class vehicle engines including but not limited to the timing chain system.

264. The defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representative Oles and proposed North Carolina subclass members the quality and characteristics of class vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs.  The defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles, including superior materials, design, manufacture, safety, durability, reliability and performance, including an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

265. The defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

266. Oles and proposed North Carolina subclass members observed, heard, saw, read or otherwise received the defendants' misrepresentations and were subjected to material omissions by the defendants regarding the quality and characteristics of class vehicle engines, required maintenance and/or maintenance intervals of class vehicle engines and/or premature engine failings, and relied upon the misrepresentations and/or omissions in choosing to purchase their class vehicles over other market vehicles.

267. The defendants secretly repaired some class engine to prevent dissemination of knowledge concerning class engine defects.

268. The defendants intended or should have known that Oles and proposed North Carolina subclass members would rely upon their misrepresentations regarding class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty and Maintenance pamphlet.

269. Proposed class representative Oles and proposed North Carolina subclass members complied with the warranty requirements for their respective class engines.

270. Although the defendants were aware of defects in class engines and misinformation and poor guidance in the owner's manuals were causing premature class engine failures, the defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

271. One scheme perpetrated by the defendants included blaming class engine failures on owners for poor or improper maintenance and other conditions for which the defendants were not allegedly responsible. In fact, the respective owners had properly maintained their class vehicles in accordance with the Maintenance manual, and the engine failures were due to the inherent defects in the materials of the timing chain components.

272. Rather than conduct an open and fair inspection in to the vehicles' engine defect and failing, and then devise and provide a repair procedure for all class engines, the defendants employed unfair and deceptive trade act practices including advising proposed North Carolina subclass members that their engine failures were on account of other reasons in order to deceive proposed North Carolina subclass members as to the basis of their engine failings and deny them repairs or repair reimbursements covered under the warranty in violation of NCUDTPA.

66

273. Oles and proposed North Carolina subclass members observed, heard, saw, read or otherwise received the defendants' misrepresentations and were subjected to material omissions by the defendants regarding their vehicles' premature engine failings, denial of liability and shifting of responsibility for the cost of repairs to individual vehicle owners and relied upon the misrepresentations and/or omissions in individually incurring the costs of their vehicle's repair.  If the defendants had not concealed class engine defects from proposed class representative Oles and proposed North Carolina subclass members within the express warranty period, class engines would have repaired by the defendants without cost to purchasers as so required under the original warranty.

274. Oles and proposed North Carolina subclass members incorporated the defendants' misrepresentations into their respective decision-making process to purchase class vehicles and pay for their repairs.  If it were not for the misrepresentations, Oles and proposed North Carolina subclass members would likely have avoided the injury altogether by initially purchasing or leasing other vehicles and later by holding the defendants responsible for their repairs under the outstanding warranty. Oles' and proposed North Carolina subclass members' reliance upon the defendants' misrepresentations were reasonable as they, like typical consumers in such a commercial context of a vehicle purchase, could not have discovered the truth of the class vehicles' quality and/or defects through reasonable diligence and investigation.

275. The defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

276. The defendants violated NCUDTPA by failing to inform class vehicle owners prior to purchase and/or after the time of their purchase during the warranty period that class engines contained defective materials, workmanship, design and manufacture, designed and manufactured and were accompanied by incorrect maintenance recommendations and suggested maintenance intervals.

67

277. The defendants violated NCUDTPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

278. The defendants further violated NCUDTPA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the engines, including but not limited to the timing chain system.

279. The defendants committed unfair and deceptive business trade act practices as described in this complaint.  The defendants repeatedly violated NCUDTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of class engines owned by Oles and proposed subclass members.

280. The secret warranty programs for class engines initiated by the defendants and other wrongful conduct of the defendants in violation of NCUDTPA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

281. As a proximate and direct result of the defendants' unfair and deceptive business trade practices, proposed class representative Oles and proposed North Carolina subclass members purchased class vehicles and sustained an ascertainable loss and financial harm.

282. Proposed class representative Oles and proposed North Carolina subclass members experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

283. The conduct of the defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

284. Wherefore, Oles and proposed North Carolina subclass members demand judgment against defendants including statutory and actual monetary damages, multiple damages, interest, costs, attorneys' fees and injunctive relief.

**COUNT XI**
**VIOLATION OF THE OHIO CONSUMER PROTECTION ACT,**
**OHIO REV. CODE ANN §§ 1345.01 *ET SEQ.***
**(On Behalf of the Ohio Subclass)**

285. Proposed class representative Scott incorporates by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

286. Proposed class representative Scott asserts this count on behalf of himself and proposed members of the Ohio subclass.

287. Proposed class representative Scott and proposed members of the Ohio subclass are "consumers" within context of the Ohio Consumer Protection Act §§ 1345.01 to 1345.13 (hereinafter "OCPA") in having purchased or leased class vehicles.

288. The defendants are persons and suppliers within the context of the OCPA at § 1345.01(C).

289. The sale of class vehicles in Ohio constitutes a consumer transaction within the context of the OCPA at § 1345.01(A).

290. The defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the OCPA as described in this complaint in violation of OCPA § 1345.02(A)-(B).

291. The defendants committed unconscionable commercial practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's timing chain system with intent that Scott and other Ohio class vehicle purchasers would rely upon such concealment, suppression and/or omission in connection with the sale and/or advertisement of class vehicles as described in this complaint in violation of OCPA § 1345.03(A)-(B).

69

292. The defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to proposed class representative Scott and proposed Ohio class members the required maintenance and/or maintenance intervals of class vehicles including but not limited to regular replacement of expensive components including but not limited to the timing chain system as described in this complaint in violation of OCPA § 1345.03(A)-(B).  The defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of class vehicles including superior design and manufacture, safety, durability, reliability and performance including an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

293. The defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to proposed class representative Scott and proposed Ohio class members the characteristics of class vehicle engines with respect to materials, workmanship, manufacture, durability, design, longevity, maintenance and operating costs as described in this complaint in violation of OCPA § 1345.03(A)-(B).

294. The defendants actively suppressed the fact that class engines were failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

295. Proposed class representative Scott and proposed Ohio class members observed, heard, saw, read or otherwise received the defendants' misrepresentations and were subjected to material omissions by the defendants regarding the quality and characteristics of class vehicle engines, required maintenance and/or maintenance intervals of class vehicle engines and/or premature engine failings and relied upon the misrepresentations and/or omissions in choosing to purchase their class vehicles over other market vehicles.

296. Proposed class representative Scott and proposed Ohio class members observed, heard, saw, read or otherwise received the defendants' misrepresentations and were subjected to material omissions by the defendants regarding their vehicles' premature engine failings, denial of liability and shifting of responsibility for the cost of repairs to individual vehicle owners and relied upon the misrepresentations and/or omissions in individually incurring the costs of their vehicle's repair.  If the defendants had not concealed class engine defects from proposed class representative Scott and proposed Ohio class members within the express warranty period, class engines would have been repaired by the defendants without cost to purchasers as so required under the original warranty.  The defendants secretly repaired some class vehicles to prevent dissemination of knowledge concerning vehicle defects.

297. The defendants intended or should have known that proposed class representative Scott and proposed Ohio class members would rely upon misrepresented characteristics of class vehicles with respect to design, materials, workmanship, manufacture and information in the owner's manual and the USA Warranty and Maintenance pamphlet.

298. Proposed class representative Scott and proposed Ohio class members complied with use and maintenance recommendations for their respective class vehicles.

299. Although the defendants were aware of defects in class engines and misinformation and improper guidance in the owner's manual and the USA Warranty and Maintenance pamphlet were causing premature class engine failures, the defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

300. One scheme the defendants employed entailed blaming class engine failures on individual owners for poor or improper maintenance or other conditions for which the defendants were not responsible.  In fact, their vehicles were properly maintained and the engine failures were due to the inherently defective timing chain systems.

71

301. Rather than conduct an open and fair inspection of the engine failings and make available a proper repair procedure for all class vehicles, the defendants employed unfair and deceptive trade act practices to deny repairs or repair reimbursements in violation of the OCPA.

302. If the defendants had not concealed class vehicle defects from proposed class representative Scott and Ohio class members within the express warranty period, class vehicles would have been repaired without cost to purchasers as so required under the original warranty.

303. The defendants fraudulently concealed unmistakable manifestations of impending class vehicle engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

304. The defendants violated OCPA by failing to inform class vehicle owners prior to purchase and/or after the time of purchase during the warranty period that class engines were defectively designed, manufactured, and materially constituted and were accompanied by incorrect maintenance recommendations and maintenance intervals.

305. The defendants violated OCPA by failing to inform class vehicle owners prior to purchase and/or after the time of purchase during the warranty period that class vehicles contained defects and would require regular replacement of expensive internal engine components, including the timing chain system.

306. The defendants further violated OCPA by failing to inform prospective class vehicle purchasers that the defendants had not properly tested the vehicles, including but not limited to the timing chain system.

307. The defendants committed unfair and deceptive business trade act practices as described in this count.  The defendants repeatedly violated OCPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,*

72

the causes of the failures of class engines owned by proposed class representative Scott and proposed Ohio class members.

308. The secret warranty programs for class vehicles initiated by the defendants and other wrongful conduct of the defendants that violates OCPA occurred within the limitations period set out in the statute and/or is tolled by the defendants' conduct.

309. As a proximate and direct result of the defendants' unfair and deceptive business trade practices, proposed class representative Scott and proposed Ohio class members purchased class vehicles and sustained ascertainable loss and financial harm.

310. Proposed class representative Scott and proposed Ohio class members experienced premature class vehicle engine failure, diminution of vehicle resale value, increased maintenance costs and incurred other substantial monetary damages and inconvenience.

311. The conduct of the defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

312. Wherefore, proposed class representative Scott and proposed Ohio class members demand judgment against defendants including statutory and actual monetary damages, multiple damages, interest, costs, attorneys' fees and injunctive relief.

## COUNT XII
## NEGLIGENT MISREPRESENTATION
### (On Behalf of the Nationwide Class or, Alternatively, each of the State Subclasses)

313. The proposed class representatives and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

314. The defendants negligently and recklessly misrepresented to proposed class representatives and proposed class members the characteristics of class vehicles with respect to engine

materials, workmanship, design and manufacture, including that the class engine had a sufficient and adequate engine timing chain system. The defendants negligently and recklessly misrepresented information in the class vehicles' owner's manuals that incorporated incorrect maintenance and service recommendations.

315. Proposed class representatives and proposed class members reasonably and justifiably relied upon representations made by the defendants including information in the class vehicles' owner's manual that incorporated incorrect engine inspection and service intervals.

316. As a proximate and direct result of proposed class representatives and proposed class members' reliance on the defendants' negligent and reckless misrepresentations, proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

317. Wherefore, proposed class representatives and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

## COUNT XIII
## BREACH OF CONTRACT
**(On Behalf of the Nationwide Class or, Alternatively, each of the State Subclasses)**

318. The proposed class representatives and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

319. Proposed class representatives and proposed class members have entered into certain contracts and warranty agreements with the defendants. Pursuant to these contracts and agreements, the defendants agreed to provide the class members with class vehicles that were in proper working order and that were fit for their intended purpose. These contracts and warranty agreements covered class engine components, including the defective timing chain systems. The defendants were further obligated to repair and/or replace any defective components and remedy mechanical problems with class engines within the prescribed warranty period described in this complaint. In exchange for these

duties and obligations, the defendants received monies from the class members in the form of payment for the purchase or lease of the class vehicles.

320. The proposed class representatives and proposed class members satisfied their obligations under these contracts, warranties and agreements.

321. The defendants failed to perform as required by the contracts and agreements, and breached said contracts and agreements by providing class members with class vehicles containing the defective timing chain system and subsequently failed to repair such defects.

322. The defendants also violated the implied covenant of good faith inherent in such contracts and agreements by selling class vehicles with limited warranties under circumstances in which the defendants knew that the defect inherent in the timing chain system would actualize and cause the system to fail beyond the warranty periods.

323. Wherefore, the proposed class representatives and proposed class members demand judgment against defendants including statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief.

**COUNT XIV**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class or, Alternatively, each of the State Subclasses)**

324. Proposed class representatives and proposed class members incorporate by reference all allegations in the above preceding paragraphs as if set forth fully in this count.

325. The defendants breached their implied and express warranties in that class vehicles were defective with respect to engine materials, workmanship, design and manufacture.  The defendants further breached their express and implied warranties in that class vehicles were accompanied by an owner's manual that incorporated incorrect inspection and service intervals.  The class vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are

used because of engine materials, workmanship, design and manufacture defects and an owner's manual that incorrectly set forth service intervals.

326.   The defendants intentionally, negligently and recklessly and/or fraudulently misrepresented to proposed class representatives and proposed class members the characteristics of class vehicles with respect to engine design and manufacture together with information in the class vehicles' owner's manuals that incorporated incorrect engine inspection and service intervals.

327. The defendants benefited financially from their breaches of warranty, misrepresentations and fraud as described in this complaint.  The defendants denied legitimate class vehicle engine warranty claims and obtained further unwarranted financial gain.

328. Proposed class representatives and proposed class members sustained monetary damages as described in this complaint.

329. Allowing the defendants to retain their monetary enrichment from their wrongful and unlawful acts would be unjust and inequitable.

330. Proposed class representatives and proposed class members request that the defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the defendants as a result of their wrongful conduct.  Proposed class representatives and proposed class members should designate beneficiaries of the trust and obtain restitution for their out of pocket expenses caused by the defendants' conduct.

331. Wherefore, proposed class representatives and proposed class members demand judgment against defendants for multiple damages, interest, costs and attorneys' fees.

**COUNT XV**
**INJUNCTIVE AND DECLARATORY RELIEF**

332. The proposed class representatives and proposed class members hereby incorporate by reference all allegations in the preceding paragraphs as if set forth fully in this count.

76

333. There is a justiciable dispute as to whether the timing chain systems incorporated in class engines should be covered under the Limited Powertrain Warranty and/or New Vehicle Limited Warranty accompanying class vehicles.

334. The proposed class representatives and proposed class members request a declaratory judgment declaring that, going forward, the remedial work necessary to correct the defective timing chain system incorporated in class engines together with all resulting damages are covered warranty claims.

335. This remedy is requested for all class members who still possess their vehicles.  This remedy is authorized under the consumer fraud statutes of California, Florida, New York, North Carolina and Ohio that grant each respective proposed class representative and proposed class member the right to seek injunctive or declaratory relief for violations of such consumer fraud statutes.

**RELIEF DEMANDED**

Wherefore, proposed class representatives request:

(a) A proposed Order pursuant to Fed. R. Civ. P. 23(c) certifying the class and/or sub-class as defined in ¶11 with such modifications, if any, to the proposed certification as required by the Court for the efficient and equitable administration of justice in this proceeding;

(b) An Order appointing proposed class representatives as representatives of the proposed class and designating the law firms of Thomas P. Sobran P.C. and Kantrowitz Goldhamer & Graifman, P.C. as counsel for the proposed class pursuant to Fed. R. Civ. P. 23(g);

(c) Judgment for proposed class representatives and proposed class members against the defendants on all issues and counts;

(d) Damages for proposed class representatives and proposed class members, including but not limited to multiple damages, together with interest, prejudgment interest, costs and attorneys' fees;

(e) Restitution for all engine repairs incurred by proposed class representatives and proposed class members resulting from the defectively designed and manufactured timing chain systems and incorrect maintenance and service intervals as set forth in the class vehicles' owner's manuals;

(f) Restitution of incidental expenses incurred by proposed class representatives and proposed class members, including but not limited to rental vehicles and other substitute transportation;

(g) A Court issued declaratory judgment declaring that all class vehicle claims caused by their defective timing chain systems are within the scope of the class vehicles' warranty coverage; and,

(h) Any other relief deemed necessary by the Court.

## REQUEST FOR JURY TRIAL

Proposed class representatives and proposed class members request trial by jury on all issues and counts.

Proposed class representatives,
By their attorney, on behalf of proposed class
representatives and proposed class members,

*/s/ Gary S. Graifman*
Gary S. Graifman
Jay I. Brody
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road
Chestnut Ridge, NY 10977
(845) 356-2570


*/s/ Thomas P. Sobran*
Thomas P. Sobran
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
(to be admitted *pro hoc vice*)